1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JAMES LEWIS DIXIE,                            No.  2:12-cv-2626-LKK-DAD

12                  Plaintiff,

13         v.                                      ORDER AND FINDINGS &
                                                   RECOMMENDATIONS
14   TIM VIRGA, et al.,

15                  Defendants.

16

17         Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42

18   U.S.C. § 1983.  Plaintiff claims that defendants violated his rights under the Free Exercise Clause

19   of the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, the

20   Religious Land Use and Institutionalized Persons Act ("RLUIPA"), Article 1 section 4 of the

21   California Constitution, and various sections of the California Penal Code and California Code of

22   Regulations in connection with a decision to prohibit inmates in the Enhanced Outpatient

23   Program ("EOP") at California State Prison, Sacramento ("CSP-Sacramento") from attending

24   Jumu'ah prayer sessions with inmates from the General Population ("GP") following an alleged

25   fight between an EOP inmate and a GP inmate after a prayer session.  This matter is before the

26   court on defendants' motion to dismiss.  (ECF No. 28.)  Plaintiff has filed an opposition (ECF

27   No. 29) and defendants have filed a reply (ECF No. 30).

28   /////

                                                   1

1    PLAINTIFF'S ALLEGATIONS

2    A.  Factual Allegations

3    Plaintiff is a black inmate in the EOP incarcerated at B-Facility at CSP-Sacramento.  (ECF

4    No. 1 at 4.)  At all times relevant to this action defendants were employed by the California

5    Department of Corrections and Rehabilitation ("CDCR") working at CSP-Sacramento.

6    In his complaint, plaintiff alleges as follows.  Plaintiff is a follower of the Islamic faith

7    and had consistently participated in the religious tenet of Jumu'ah prayer in B-Facility chapel

8    along with GP inmates from about January 2010 until November 4, 2011.  Id.  On November 7,

9    2011, defendant Fardan, the Muslim Chaplain at CSP-Sacramento, informed plaintiff that EOP

10   inmates, such as plaintiff, would no longer be allowed by prison officials to attend Jumu'ah

11   prayer on Fridays with GP inmates because of an altercation on Friday, November 4, 2011

12   between an EOP inmate and a GP inmate in the chapel after Jumu'ah prayer.  Id.  Plaintiff asked

13   Fardan to identify the prison official who made the initial decision to restrict the access of EOP

14   inmates' to Jumu'ah prayer services.[1]  Id.  Defendant Fardan refused to answer plaintiff's

15   question.  Id.

16   On December 8, 2011, plaintiff filed an inmate grievance regarding being denied access to

17   Jumu'ah prayer, asserting that an isolated incident between two individual inmates did not justify

18   restricting plaintiff's participation in religious services.  Id.  On December 13, 2011, plaintiff's

19   inmate grievance was rejected by the prison's Inmate Appeals Office and returned to plaintiff

20   with instructions to attach documentation evidencing the suspension of religious services.  Id.

21   Plaintiff obtained the required documentation[2] regarding the suspension of religious services

22   sometime in January 2012, attached it to his inmate grievance and the resubmitted grievance was

23   accepted for processing on February 21, 2012.  Id.

24   _____

25   [1]  Plaintiff refers to this unidentified prison official as a "John Doe" defendant throughout his
     complaint.

26
27   [2]  The documentation plaintiff obtained was a December 22, 2011 memorandum authored by
     defendant Elia that stated that EOP inmates could no longer be integrated with GP inmates
     because an EOP inmate was attacked and the decision to restrict EOP access was a matter of
28   plaintiff's personal safety as well as institutional security.  Id. at 5, 34.

2

1        Around December 18, 2011, plaintiff spoke with Bryan Lewis, the EOP inmate who was

2   suspected of being involved in the incident with the GP inmate on November 4.  Id. at 4.  Inmate

3   Lewis told plaintiff that he never had a fight with any GP inmate, that he was only suspected of

4   fighting and had been placed in Administrative Segregation pending an investigation into the

5   matter.  Lewis also reported that he was later released back into the inmate population after the

6   investigation had revealed that no fight actually took place.  Id. at 4-5, 10.  Lewis told plaintiff

7   that he had never received a CDCR 115 Rule Violation Report or any other type of prison

8   disciplinary action in connection with the suspected incident.  Id. at 5, 10.

9        Plaintiff has attached to his complaint in this action a declaration[3] by Muwakkil Tyson a

10  GP inmate incarcerated at CSP-Sacramento who was present in the B-Facility chapel during the

11  November 4, 2011 incident.  Id. at 18.  Tyson states that, during the Jumu'ah prayer service

12  defendant Fardan activated his personal alarm because one EOP inmate "became animated."  Id.

13  Tyson further declares that correctional officers responded to defendant Fardan's alarm, that no

14  fight occurred, and that the incident involving the animated inmate had nothing to do with any

15  conflict between EOP inmates and GP inmates.  Id.

16       On January 22, 2012, plaintiff sent a CDCR 22 Inmate Request to defendant Elia asking

17  that Elia identify the source of the facts stated in his December 22, 2011 memorandum and reveal

18  the identity of the prison official who made the decision to stop EOP inmates from attending

19  prayer services with GP inmates.  Id.  Plaintiff received a response to his request on January 31,

20  2012, authored by defendant Fardan, which stated that the incident happened two months ago and

21  that Fardan would be available to provide Jumu'ah prayer services to EOP inmates on Thursdays.

22  Id. at 5, 13.  On February 1, 2012, plaintiff resubmitted his CDCR 22 request to defendant Elia,

23  stating that defendant Fardan had evaded plaintiff's questions and that Elia was the only one who

24  could answer them.  Id.  Defendant Elia responded on February 6, 2012, stating that "custody

25  staff @ Sgt. or above may approve a ducat request for chapel services."  Id.  Plaintiff claims that

26  this response purposely evaded the questions he had posed to defendant Elia.  Id. at 5.

27  _____

28  [3]  "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all
    purposes."  Fed. R. Civ. P. 10(c).

1    On February 11, 2012, plaintiff sent defendant Elia a second CDCR 22 request repeating

2    the same two questions.  Id. at 5, 15.  On April 16, 2012, defendant Fardan responded to this

3    request, stating that plaintiff's questions had been answered.  Id. at 5-6, 15.  On April 18, 2012,

4    plaintiff submitted his second request for supervisor review, stating that Fardan's response was

5    incorrect and that only Elia could answer the questions asked.  Id. at 6, 15.  Elia answered this

6    request on April 30, 2012, stating that plaintiff's questions had been "asked and answered several

7    times."  Id.  Plaintiff claims that his questions regarding the basis for the suspension of religious

8    services presented in the two CDCR 22 requests have never been answered.  Id. at 6.

9    On May 11, 2012, the CSP-Sacramento Warden defendant Virga addressed plaintiff's

10    inmate appeal at the second level of review.  Id.  Plaintiff asserts that

11    
12    Virga did not address the material issue of whether the alleged
     incident between the two said inmates on November 4, 2011, was
     an isolated incident or whether the said incident was the result of
     animosity or hostility between EOP inmates and GP inmates that
13    would pose a threat to inmate safety and institutional safety.

14    Id.  Plaintiff also asserts that Virga refused to identify the officer who made the order to restrict

15    EOP inmates' access to the Jumu'ah prayer services.  Id.

16    Plaintiff alleges that the incident between the EOP inmate and the GP inmate on

17    November 4, 2011 was at most merely a personal dispute between two inmates and that there is

18    no animosity or hostility between black EOP inmates and black GP inmates that would pose a

19    threat to plaintiff's safety and/or institutional security if he were allowed to continue to attend

20    Jumu'ah prayer services along with GP inmates.  Id.  Plaintiff further alleges that Jumu'ah prayer

21    is a mandatory weekly prayer that can only be held on Fridays during the apex of the sun and that

22    all Muslims must attend this prayer to be in accordance with the Holy Qur'an.  Id.

23    According to plaintiff, prison policies and procedures allow EOP inmates access to GP

24    prison programs, including educational, vocational, employment, and religious programs, and

25    state that an EOP inmate shall not be excluded from such programs because of his or her

26    placement in EOP.  Id. at 6, 21.  Plaintiff states that he has exhausted his inmate appeals through

27    the third and final level of review.  Id. at 6, 24-29.  On April 4, 2012, plaintiff filed a claim with

28    the California Compensation and Government Claims Board for violations of state constitutional

4

1   and statutory law.  Id. at 7, 40-41.  According to plaintiff, the Board failed to act on the claim

2   within forty-five days of plaintiff's filing date.  Id.

3         B.  Plaintiff's Claims

4         Plaintiff alleges that defendants have violated his rights under the Free Exercise Clause of

5   the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, the RLUIPA,

6   Article 1 section 4 of the California Constitution, and various sections of the California Penal

7   Code and California Code of Regulations.  Id. at 7.  Specific to his First Amendment claim,

8   plaintiff alleges that the defendants restricted his ability to exercise his religious freedom on the

9   basis of unsubstantiated information and reasons that were "not reasonably necessitated by a

10  legitimate penological interest."  Id.

11        Plaintiff also alleges that the defendants conspired to deprive him of equal protection

12  under the law and acted in furtherance of this conspiracy by having the John Doe defendant

13  deprive plaintiff of his religious rights under the First Amendment and the RLUIPA.  Id.

14        With respect to his claim under RLUIPA, plaintiff alleges that defendants' actions

15  imposed a substantial burden on his religious exercise on the basis of unsubstantiated information

16  and reasons that were "not in furtherance of a compelling governmental interest" and did not

17  constitute the "least restrictive means of achieving" a compelling governmental interest, in

18  violation of 42 U.S.C. section 2000cc-1.  Id.

19        In connection with his state law claims, plaintiff alleges that the defendants violated his

20  rights under Article 1 section 4 of the California Constitution, California Penal Code §§ 2600 and

21  5009(a), California Code of Regulations Title 15, § 3120, and the CDCR's Department

22  Operations Manual §§ 101060.1 and 101060.3.  Id.

23        Plaintiff asserts that he is suing all defendants in both their official and individual

24  capacities.  Id.  He seeks relief in the form of a declaration that defendants have violated his rights

25  under the laws of both California and the United States.  Id. at 8.  Plaintiff further seeks

26  preliminary and permanent injunctions ordering defendant Virga and the John Doe defendant "to

27  permit plaintiff to attend Jumu'ah prayer and exercise his right to religious freedom."  Id.  Finally,

28  plaintiff seeks compensatory and punitive damages against each defendant.

5

STANDARDS APPLICABLE TO A MOTION TO DISMISS

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for a motion to dismiss for "failure to state a claim upon which relief can be granted." In considering such a motion brought pursuant to Rule 12(b)(6), the court must accept as true the allegations of the complaint in question, Erickson v. Pardus, 551 U.S. 89, 94 (2007), and construe the pleading in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). In order to survive dismissal for failure to state a claim a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 554 (2007). However, "[s]pecific facts are not necessary; the statement [of facts] need only '"give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."'" Erickson, 551 U.S. at 93 (quoting Bell Atlantic Corp., 550 U.S. at 554, in turn quoting Conley v. Gibson, 355 U.S. 41, 47 (1957).

DEFENDANTS' MOTION

Defendants argue that plaintiff's complaint should be dismissed in its entirety because:

> (1) Plaintiff has failed to state a claim for violation of the First or Fourteenth Amendments of the United States Constitution; (2) Plaintiff has failed to state a claim for violation of California's Constitution; (3) Plaintiff has failed to state a claim that his right to free exercise of his religion was violated under the RLUIPA; (4) Suit against all three Defendants in their official capacities is barred by the Eleventh Amendment; (4) Suit against Defendants in their individual for a violation of RLUIPA is barred; and (5) Plaintiff cannot bring suit for alleged violations of California's Penal Code.

(Motion (ECF No 28-1) at 2.)

A. Warden Virga

In moving to dismiss, defense counsel argues that plaintiff has failed to state any cognizable claim against defendant Warden Virga because the allegations of his complaint fail to show that the warden was directly involved in the alleged violations of plaintiff's rights.

Plaintiff's only allegations in his complaint regarding defendant Virga are that the warden reviewed plaintiff's inmate appeal at the second level review, did not address the "material issue" presented in that grievance regarding whether the November 4, 2011 incident was an isolated

1    issue between two inmates or the result of hostility between EOP inmates and GP inmates, did not

2    reveal the identity of the John Doe defendant, and "conspired" with defendants Fardan and Elia

3    "for the purpose of depriving plaintiff" of his equal protection rights. (Complaint (ECF No. 1) at

4    6-7.) Plaintiff concedes in his opposition to defendants' motion that his claims against Virga are

5    based on a theory of supervisor liability. (ECF No. 29 at 8.) However, plaintiff argues that

6    "Virga is liable in this matter because he is the Warden or head supervisor of CSP-Sac and is

7    ultimately responsible for the execution of all institutional policies of CSP-Sac, its functions, its

8    employees and the safety, welfare and rights of all prisoners housed at CSP-Sac." Id. For the

9    reasons discussed below, defendants' motion to dismiss should be granted with respect to all of

10   plaintiff's claims against defendant Warden Virga.

11           "Liability under section 1983 arises only upon a showing of personal participation by the

12   defendant." Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979). There is no respondeat superior

13   liability, and each defendant is only liable for his or her own misconduct. Ashcroft v. Iqbal, 556

14   U.S. 662, 676 (2009). A supervisor may be held liable for the constitutional violations of his or

15   her subordinates only if he or she "participated in or directed the violations, or knew of the

16   violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir.1989).

17   Accordingly, plaintiff does not state a cognizable claim against defendant Virga insofar as his

18   claim is based solely on Virga's role as Warden of CSP-Sacramento. Rather, any cognizable

19   claims against Warden Virga can arise only from factual allegations which, if true, would show

20   Virga's direct participation in or failure to prevent any known constitutional violations. Here, the

21   scant allegations in plaintiff's complaint with respect to defendant Virga's involvement are

22   insufficient to state a claim based on a theory of supervisor liability. Plaintiff fails to allege in his

23   complaint any facts showing how defendant Warden Virga directly participated in or failed to act

24   to prevent any known violations of law being perpetrated by his subordinates. Defendants'

25   /////

26   /////

27   /////

28   /////

7

1   motion to dismiss should therefore be granted with respect to all of plaintiff's claims against

2   defendant Virga.[4]

3          The undersigned has carefully considered whether plaintiffs may amend the complaint to

4   state any claim upon which relief can be granted.  "Valid reasons for denying leave to amend

5   include undue delay, bad faith, prejudice, and futility."  California Architectural Bldg. Prod. v.

6   Franciscan Ceramics, 818 F.2d 1466, 1472 (9th Cir. 1988).  See also Klamath-Lake Pharm. Ass'n

7   v. Klamath Med. Serv. Bureau, 701 F.2d 1276, 1293 (9th Cir. 1983) (holding that, while leave to

8   amend shall be freely given, the court does not have to allow futile amendments).  In light of the

9   new assertions by plaintiff in his opposition to the pending motion, along with certain facts

10  alleged in his original complaint, the undersigned cannot find at this time that the defects in

11  plaintiff's complaint with respect to his claims against Warden Virga are incapable of being cured

12  by amendment.  Therefore, plaintiff should be granted leave to amend his complaint with regard

13  to these claims.  Potter v. McCall, 433 F.2d 1087, 1088 (9th Cir. 1970) (recognizing that a

14  prisoner plaintiff proceeding pro se with a civil rights action is entitled to an opportunity to

15  amend his complaint to overcome deficiencies unless it is clear that the deficiencies cannot be

16  overcome by amendment.)

17         Plaintiff is cautioned, however, that if he elects to file an amended complaint in an attempt

18  to cure the noted deficiency with respect to his claim against defendant Virga any amended claim

19  must be supported by factual allegations of the kind referred to above; vague and conclusory

20  assertions are insufficient to support a cognizable claim for relief.  See Bell Atlantic Corp., 550

21  U.S. at 554.

22  ───────────────
    [4]  In his opposition to the pending motion to dismiss, plaintiff for the first time asserts that
23  defendant Virga had a "fair opportunity to correct such violations and he failed/refused to do so,
    which . . . was an act that he was legally required to perform.  (Opp'n (ECF No. 29) at 9.)
24  However, "[v]ague and conclusory allegations of official participation in civil rights violations
    are not sufficient to withstand a motion to dismiss."  Pena v. Gardner, 976 F.2d 469, 471 (9th Cir.
25  1992) (quoting Ivey v. Board of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir.1982)).
    See also Iqbal, 556 U.S. at 678.  Therefore, even if this conclusory allegation had appeared in
26  plaintiff's complaint, as opposed to being first advanced in opposition to a motion to dismiss, it
    would still be insufficient to state a cognizable claim against Virga.  For the same reason,
27  plaintiff's allegation that Virga was involved in a "conspiracy" with the other defendants is
    insufficient to withstand defendants' motion to dismiss as to plaintiff's equal protection claim.
28

1

B. Free Exercise

2     Plaintiff claims that defendants violated his rights under the Free Exercise clauses of both

3 the United States Constitution and the California Constitution.  The Free Exercise Clause of the

4 First Amendment to the United States Constitution, made applicable to the states through the

5 Fourteenth Amendment, "forbids all laws 'prohibiting the free exercise' of religion." McDaniel v.

6 Paty, 435 U.S. 618, 620 (1978).  The Free Exercise Clause protects a person's right to hold a

7 particular religious belief and the right to engage in conduct motivated by that belief.  Emp't Div.

8 v. Smith, 494 U.S. 872, 877 (1990).  "[T]he 'exercise of religion' often involves not only belief

9 and profession [of belief] but the performance of (or abstention from) physical acts . . . ." Id. [5]

10     "The right to exercise religious practices and beliefs does not terminate at the prison

11 door." McElyea v. Babbitt, 833 F.2d 196, 197 (9th Cir. 1987) (citing O'Lone v. Shabazz, 482

12 U.S. 342 (1987) and Bell v. Wolfish, 441 U.S. 520, 545 (1979)).  Moreover, the right to free

13 exercise of religious faith is "necessarily limited by the fact of incarceration, and may be curtailed

14 in order to achieve legitimate correctional goals or to maintain prison security."  McElyea, 833

15 F.2d at 197 (citing O'Lone, 482 U.S. at 348).  Federal courts "determine whether these competing

16 interests are balanced properly by applying a 'reasonableness' test."  Id.  Action by prison

17 officials that impacts an inmate's right to free exercise of religion "is valid if it is reasonably

18 related to legitimate penological interests."  Id. (quoting O'Lone, 482 U.S. at 348, in turn quoting

19 Turner v. Safley, 482 U.S. 78, 89 (1987)).

20     In Turner the United States Supreme Court announced the standard for determining the

21 reasonableness of a prison regulation that infringes on prisoners' constitutional rights.  More

22 recently, the Supreme Court clarified the standard announced in Turner, stating as follows:

23 /////

24

---

25 [5]  Likewise, Article 1, section 4 of the California Constitution states in relevant part that "[f]ree
exercise and enjoyment of religion without discrimination or preference are guaranteed."  Cal.
26 Const. art. I, § 4.  "Because the right to free exercise under the California Constitution is no
broader than that under the Federal Constitution, the court applies the same analysis to both
27 claims." Rouser v. White, 630 F. Supp. 2d 1165, 1187 (E.D. Cal. 2009).  See also Thompson v.
Dep't. of Corr., 25 Cal.4th 117, 135 n.6 (2001); People v. Woody, 61 Cal.2d 716 (1964); Vernon
28 v. City of Los Angeles, 27 F.3d 1385, 1392 (9th Cir. 1994).

1
2
3
4
5

> [F]our factors are relevant in deciding whether a prison regulation affecting a constitutional right . . . withstands constitutional challenge: [1] whether the regulation has a "'valid, rational connection'" to a legitimate governmental interest; [2] whether alternative means are open to inmates to exercise the asserted right; [3] what impact an accommodation of the right would have on guards and inmates and prison resources; and [4] whether there are "ready alternatives" to the regulation.

6
7
8

Overton v. Bazzetta, 539 U.S. 126, 132 (2003) (citing Turner, 482 U.S. at 89-91). "The burden, moreover, is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." Id.

9
10
11
12
13
14
15
16
17
18
19

   Legitimate penological interests include "security, order, and rehabilitation." Procunier v. Martinez, 416 U.S. 396, 413 (1974). See also Bell, 441 U.S. at 546–47 (finding that the protection of inmates and staff is a legitimate penological interest). "The security concerns expressed by prison officials are entitled to respect and deference by the courts." Harper v. Wallingford, 877 F.2d 728, 733 (9th Cir. 1989) (citations omitted). See also Shaw v. Murphy, 532 U.S. 223, 229 (2001). Although in Turner the Supreme Court dealt with the reasonableness of prison regulations, the same analysis has been applied to individual acts by prison officials preventing a prisoner from engaging in a religious practice. See Ford v. McGinnis, 352 F.3d 582, 594–95 (2d Cir. 2003); Davis v. Powell, 901 F. Supp. 2d 1196, 1224 (S.D. Cal. 2012) (citing Ford, 352 F.3d at 594-95) (utilizing the Turner factors in assessing the allegations of a complaint on motion to dismiss).

20
21
22
23
24
25
26
27
28

   Here, defendants do not dispute the sincerity of plaintiff's religious beliefs. Rather, in moving to dismiss defendants contend that consideration of the first Turner factor weighs in their favor in this case because there is a rational connection between the restrictions placed on plaintiff's access to the chapel for Jumu'ah prayer and the penological interests of ensuring inmate safety and institutional security. (ECF No. 28-1 at 6-7.) Both of these reasons asserted by defendants in support of the challenged restriction can be legitimate penological interests. Procunier, 416 U.S. at 413 (1974) (stating that legitimate penological interests include "security, order, and rehabilitation"); Bell, 441 U.S. at 546 ("[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or

1    retraction of the retained constitutional rights of both convicted prisoners and pretrial

2    detainees."); Pell v. Procunier, 417 U.S. 817, 823 (1974) ("[C]entral to all other corrections goals

3    is the institutional consideration of internal security within the corrections facilities themselves.").

4    However, in order to pass constitutional muster, the means used to carry out defendants' stated

5    goals must be rationally related to these legitimate interests.  Turner, 482 U.S. at 89-91.

6        Defendants claim that the contested policy was rationally related to the asserted

7    penological interests because it was developed in response to the alleged fight between an EOP

8    inmate and a GP inmate during the November 4, 2011 Jumu'ah prayer service.  (ECF No. 28-1 at

9    6.)  Plaintiff disagrees with this notion, asserting that the restriction imposed upon him was not

10   rationally related to these valid penological goals because defendants' reasons were not supported

11   by "credible and genuine evidence."  (ECF No. 29 at 11.)  Specifically, plaintiff alleges that

12   defendants' reliance on the Elia memorandum, which is appended to his complaint as an exhibit

13   (see ECF No. 1 at 34), is unfounded in that it "is not substantiated as credible or reliable because

14   the facts stated in the Memo are conclusory and constitutes hearsay information."  (ECF No. 29 at

15   11.)  Additionally, plaintiff argues that he has contested the authenticity of the document within

16   the allegations of his complaint.  Id.; (ECF No. 1 at 5.)  Finally, plaintiff argues that "Elia is liable

17   in this case for making false statements in his Memorandum to unlawfully/illegitimately justify

18   depriving plaintiff of his right to attend Jumu'ah prayer services."  (ECF No. 29 at 11.)

19       In reply defense counsel contends that the court should decline to consider the additional

20   allegations advanced by plaintiff in his opposition brief because they are conclusory in nature and

21   are contradicted by the Elia memorandum, which is attached to and incorporated into plaintiff's

22   complaint.  However, based upon a liberal construction of the complaint and the documents

23   attached to his complaint[6] it appears that plaintiff is alleging that the statement in the Elia

24   memorandum that an EOP inmate was attacked  is false and that no fight actually took place

25   /////

26

---

27   [6]  "In civil rights cases where the plaintiff appears pro se, the court must construe the pleadings
     liberally and must afford plaintiff the benefit of any doubt."  Karim-Panahi v. Los Angeles Police
28   Dep't, 839 F.2d 621, 623 (9th Cir. 1988).

1    during the Jumu'ah prayer service on November 4, 2011.  (See e.g., ECF No. 1 at 5, 10, 13, 18,

2    27, 34.)

3          When plaintiff's allegations in this regard are taken as true, there is no other indication of

4    hostility between EOP and GP inmates that would pose a threat to inmate or institutional safety if

5    both groups were allowed to attend the same Jumu'ah prayer session held on Fridays.  Because

6    plaintiff's complaint alleges that no fight took place between EOP and GP inmates on November

7    4, 2011 during the Jumu'ah prayer service and that relations between EOP and GP inmates posed

8    no security risks, defendants' argument that plaintiff's complaint is subject to dismissal because

9    the decision to preclude EOP inmates from attending Jumu'ah prayer with GP inmates due to

10   safety and security concerns that arose from such a fight between inmates must be rejected at the

11   motion to dismiss stage.  See Turner, 482 U.S. at 89-90 ("[A] regulation cannot be sustained

12   where the logical connection between the regulation and the asserted goal is so remote as to

13   render the policy arbitrary or irrational.")  Moreover, all of defendants' other arguments for

14   dismissal of plaintiff's free exercise claim fail for the same reason

15         C.  RLUIPA

16         RLUIPA prohibits correctional officials from placing a substantial burden on an inmate's

17   religious exercise "unless the burden furthers 'a compelling governmental interest' and does so by

18   'the least restrictive means.'"  Cutter v. Wilkinson, 544 U.S. 709, 712 (2005) (quoting 42 U.S.C.

19   § 2000cc-1(a)(1)-(2)).  A plaintiff asserting a RLUIPA violation has the initial burden of alleging

20   a prima facie claim that the challenged state action constitutes a "substantial burden on the

21   exercise of his religious beliefs."  Warsoldier v. Woodford, 418 F.3d 989, 994 (9th Cir. 2005).  If

22   the plaintiff meets this burden, the state must prove that "any substantial burden . . . is both 'in

23   furtherance of a compelling governmental interest' and the 'least restrictive means of furthering

24   that compelling governmental interest.'"  Id. (quoting 42 U.S.C.A. § 2000cc–1(a); § 2000cc–

25   2(b)).  See also Shakur v. Schriro, 514 F.3d 878, 888-89 (9th Cir. 2008).

26          Although RLUIPA does not articulate what constitutes a "substantial burden" on

27   religious exercise, the Ninth Circuit has defined the term according to its plain meaning.  San Jose

28   Christian Coll. v. City of Morgan Hill, 360 F.3d 1024, 1034 (9th Cir. 2004).  Specifically, state

1    action imposes a "substantial burden" on religion when the regulation or policy "'denies [an

2    important benefit] because of conduct mandated by religious belief, thereby putting substantial

3    pressure on an adherent to modify his behavior and to violate his beliefs.'" Warsoldier, 418 F.3d

4    at 995 (alteration in original) (quoting Thomas v. Review Bd. of the Ind. Emp't Sec. Div., 450

5    U.S. 707, 717–18 (1981)).  The statute defines "religious exercise" to include "any exercise of

6    religion, whether or not compelled by, or central to, a system of religious belief."  42 U.S.C.A. §

7    2000cc–5(7)(A).  See also Shakur, 514 F.3d at 888.

8         RLUIPA is construed broadly and in favor of the prisoner's right to exercise his religious

9    beliefs.  42 U.S.C.A. § 2000cc–3(g); Warsoldier, 418 F.3d at 995.  Nevertheless, the RLUIPA

10   does not "elevate accommodation of religious observances over an institution's need to maintain

11   order and safety."  Cutter, 544 U.S. at 722.  Prison security constitutes a compelling state interest,

12   and courts must give deference to prison officials' expertise in this area.  Id. at 725 n. 13.  Courts

13   should not, however, in according due deference to the judgment of prison officials with respect

14   to the need for a challenged restriction automatically simply rubber stamp the judgment of prison

15   officials.  Lovelace v. Lee, 472 F.3d 174, 190 (4th Cir. 2006).

16        "[P]rison officials bear the burden of establishing that the restriction challenged is the

17   'least restrictive alternative to achieve' a compelling governmental interest."  Alvarez v. Hill, 518

18   F.3d 1152, 1156 (9th Cir. 2008) (quoting Warsoldier, 418 F.3d at 998).  "If prison officials meet

19   th[is] standard, the prison regulation passes muster under RLUIPA, regardless of the burden it

20   imposes on religious exercise."  Greene v. Solano Cnty. Jail, 513 F.3d 982, 990 (9th Cir. 2008).

21   Nonetheless, prison officials cannot justify restrictions by merely claiming the regulation is

22   necessary to maintain order and security.  Id. at 989–90.  Furthermore, prison officials "cannot

23   meet [their] burden to prove least restrictive means unless [they] demonstrates that [they have]

24   actually considered and rejected the efficacy of less restrictive measures before adopting the

25   challenged practice."  Warsoldier, 418 F.3d at 999.

26        In moving to dismiss plaintiff's complaint defendants implicitly concede that plaintiff has

27   sufficiently alleged that the challenged policy has significantly burdened his religious exercise.

28   (ECF No. 28-1 at 9.)  Defendants argue, however, that plaintiff's RLUIPA claim is still subject to

13

1    dismissal because the  allegations of his complaint show that the challenged action serves the

2    compelling interests of inmate safety and institutional security and that it is the least restrictive

3    means of achieving those interests under the circumstances.  Id. at 9-10.  Plaintiff again argues

4    that defendants have failed to establish a compelling purpose because they rely on the reasons

5    offered in the Elia memorandum attached to his complaint, which is both hearsay and "challenged

6    [by plaintiff] as false."  (ECF No. 29 at 15.)

7            As discussed above with respect to plaintiff's free exercise claims, if taken as true the

8    allegations of plaintiff's complaint do not show that the challenged action was in furtherance of

9    defendants' asserted compelling interests.  This is so because plaintiff alleges in his complaint

10   that no fight ever took place between GP and EOP inmates on November 4, 2011 during Jumu'ah

11   prayer and that there were no other indications that there existed any underlying hostility between

12   the two groups of inmates that would pose a security risk within the prison.  The allegations of

13   plaintiff's complaint state a cognizable claim under the RLUIPA.  Therefore, defendants' motion

14   to dismiss should also be denied with respect to this claim.

15           D.  Monetary Damages Under the RLUIPA

16           Defendants next argue that they are entitled to dismissal of plaintiff's claims under the

17   RLUIPA for monetary relief against defendants in their individual capacities.  In his complaint

18   plaintiff seeks compensatory and punitive damages against each defendant.  (Compl. (ECF No. 1)

19   at 8.)

20            Damages under the RLUIPA against a state actor in their official capacity are barred by

21   the state's Eleventh Amendment sovereign immunity.  Sossamon v. Texas, ___ U.S. ___, 131 S.

22   Ct. 1651, 1663 (2011); Holley v. California Dept. of Corrections, 599 F.3d 1108, 1114 (9th

23   Cir.2010) ("The Eleventh Amendment bars Holley's suit for official-capacity damages under

24   RLUIPA.").  Therefore, to the extent plaintiff seeks damages against defendants in their official

25   capacities with respect to his RLUIPA claim, the claim should be dismissed

26           The question of whether damages are available under RLUIPA against defendants in their

27   individual capacity has not been resolved by the Supreme Court and Ninth Circuit has expressly

28   reserved the issue.  See Florer v. Congregation Pidyon Shevuyim, N.A., 639 F.3d 916, 922 n.3

                                                    14

1   (9th Cir. 2011) ("Defendants do not challenge, and we do not decide, RLUIPA's application to

2   private actors sued for damages in their individual capacity . . . . The Ninth Circuit has not ruled

3   on this issue in a precedential opinion, and we reserve this question for another day.")

4          Five other federal circuit courts, however, have held that RLUIPA does not authorize suits

5   for damages against government officials in their individual capacities.  See Stewart v. Beach,

6   701 F.3d 1322, 1334-35 (10th Cir. 2012); Rendelman v. Rouse, 569 F.3d 182, 187-89 (4th Cir.

7   2009); Sossamon v. Texas, 560 F.3d 316, 327-29 (5th Cir. 2009); Nelson v. Miller, 570 F.3d 868,

8   886-89 (7th Cir. 2009); Smith v. Allen, 502 F.3d 1255, 1271-75 (11th Cir. 2007).  Most courts

9   addressing the issue have assessed Congress's power to enact RLUIPA as stemming from its

10  Article I spending power.  See generally Nelson, 570 F.3d at 886.  These courts have reasoned

11  that, because individual officers are not the recipients of federal funds, Congressional enactments

12  pursuant to the Spending Clause do not impose liability on individual defendants.  Several district

13  courts within the Ninth Circuit, including judges of this court, have also concluded that RLUIPA

14  does not authorize suits for damages against government officials in their individual capacities.

15  See, e.g., Blanks v. Cate, 2:11-CV-0171 WBS CKD, 2013 WL 1129280, at *8-9 (E.D. Cal. Mar.

16  18, 2013); Washington v. Brown, No. 2:06-CV-1994 WBS DAD (PC), 2012 WL 3704847, at *2-

17  7 (E.D. Cal. Aug. 24, 2012) (adopted insofar as consistent with district court order issued October

18  5, 2012); Birdwell v. Cates, No. Civ. S-10-0719 KJM GGH P, 2012 WL 1641964, at *9 (E.D.

19  Cal. May 9, 2012) (and cases cited therein); Kindred v. California Department of Mental Health,

20  No. 1:08-CV-1321 AWI GSA PC, 2011 WL 2709104, at *8–9 (E.D. Cal. July 12, 2011) (and

21  cases cited therein).  There appears to be no persuasive reason to depart from the reasoning of the

22  Fourth, Fifth, Seventh, Tenth and Eleventh Circuits and the various district courts within the

23  Ninth Circuit which have concluded that RLUIPA does not create a damages remedy against

24  individual defendants.  Therefore, defendants are entitled to dismissal with respect to plaintiff's

25  damages claims against them under RLUIPA.[7]

26

27  ───────────────
    [7]  Plaintiff also seeks declaratory and injunctive relief with respect to his claims under the
    RLUIPA.  To the extent that plaintiff seeks such relief on his RLUIPA claims, defendants'
28  motion to dismiss should be denied for the reasons stated above.

1    E. Equal Protection

2    The Equal Protection Clause requires the State to treat all similarly situated people

3    equally. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).  State prison

4    inmates retain a right to equal protection of the laws guaranteed by the Fourteenth Amendment.

5    Walker v. Gomez, 370 F.3d 969, 974 (9th Cir. 2004) (citing Lee v. Washington, 390 U.S. 333,

6    334 (1968)).  "Moreover, the Equal Protection Clause entitles each prisoner to 'a reasonable

7    opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who

8    adhere to conventional religious precepts.'" Shakur, 514 F.3d at 891 (quoting Cruz v. Beto, 405

9    U.S. 319, 322 (1972)).  To sufficiently allege an equal protection claim, a plaintiff must allege

10   facts showing "that the defendants acted with an intent or purpose to discriminate against the

11   plaintiff based upon membership in a protected class."  Barren v. Harrington, 152 F.3d 1193,

12   1194 (9th Cir. 1998).  In the prison setting, claims based upon the Equal Protection Clause are

13   analyzed under the same Turner test that courts apply in assessing the constitutionality of claims

14   under the First Amendment.  Turner, 482 U.S. at 89 ("[W]hen a prison regulation impinges on

15   inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate

16   penological interests."); see also Shakur, 514 F.3d at 891;  DeHart v. Horn, 227 F.3d 47, 61 (3d

17   Cir. 2000) (stating that the Turner test applies to both equal protection and free exercise claims);

18   Brown v. Johnson, No. 98-cv-6260CJS(F), 2003 WL 360118, at * (W.D. N.Y. Feb. 14, 2003)

19   ("While [the Turner] standard was established in the context of First Amendment issues, it is also

20   relevant to the assessment of equal protection claims in the prison setting.").

21   Here, in moving to dismiss defendants argue that plaintiff's complaint alleges no facts

22   showing that defendants intentionally discriminated against plaintiff in implementing and

23   carrying out the challenged policy.  (ECF No. 28-1 at 11.)  The court agrees with this assessment.

24   With respect to his equal protection claim, plaintiff merely alleges in his complaint that

25   defendants

26            conspired for the purpose of depriving plaintiff, James Lewis Dixie,
          either directly or indirectly, of equal protection of the laws, by
27        acting in furtherance of the object of such conspiracy of the acts
          directly committed by Defendant John Doe to deprive plaintiff of
28        his rights as alleged above.

16

1   (Compl. (ECF No. 1) at 7.)  These conclusory and vague allegations are insufficient to establish

2   that defendants intentionally treated plaintiff differently than other, similarly situated inmates for

3   the purpose of depriving plaintiff of his right to freely exercise his religion.  See Pena, 976 F.2d at

4   471.

5          Plaintiff asserts in his opposition to the pending motion that defendants are not entitled to

6   dismissal of his equal protection claim because the facts alleged in his complaint show that the

7   challenged action was not reasonably related to legitimate penological interests under the Turner

8   factors.  (ECF No. 29 at 17.)  This argument is unpersuasive, however, because plaintiff has failed

9   to allege facts sufficient to substantiate the underlying equal protection claim.  Accordingly,

10  defendants' motion to dismiss should be granted with respect to plaintiff's claims under the Equal

11  Protection Clause of the Fourteenth Amendment.

12         Nevertheless, given the assertions in plaintiff's opposition and certain facts alleged in the

13  complaint, the court cannot find that the defects in plaintiff's complaint with respect to his equal

14  protection claims could not be cured by amendment.  Plaintiff should therefore be granted leave

15  to amend his complaint with regard to these claims.  Potter, 433 F.2d at 1088.  Plaintiff is

16  cautioned once again, however, that should he elect to file an amended complaint in an attempt to

17  cure the noted deficiencies with respect to his equal protection claim any amended claim must be

18  supported by factual allegations; vague and conclusory assertions are insufficient to support a

19  cognizable claim for relief.  See Bell Atlantic Corp., 550 U.S. at 554.

20         F.   Eleventh Amendment

21         Defendants argue that plaintiff may not seek monetary damages from defendants in their

22  official capacities.  (ECF No. 28-1 at 11-12.)  Plaintiff has stated his non-opposition to the

23  pending motion to dismiss with respect to this argument. (ECF No. 29 at 17-18.)

24         Plaintiff's non-opposition is well-taken.  The Eleventh Amendment bars all suits against

25  states, irrespective of the relief requested.  Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 58

26  (1996).  Additionally, suits brought against state officials in their official capacities are essentially

27  suits brought against the state.  Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989).

28  Therefore, the Eleventh Amendment also bars suits for monetary damages against state officers in

1    their official capacities.  See id.  Plaintiff's demand for the award of monetary damages against

2    any of the named defendants in their official capacities should therefore be dismissed.

3            G.  Plaintiff's Other State Law Claims

4            Plaintiff claims that based upon the facts alleged therein defendants also violated his rights

5    under California Penal Code §§ 2600 and 5009(a), California Code of Regulations, Title 15, §

6    3210, and Department Operations Manual §§ 101060.1 and 101060.3.  (Compl. (ECF No. 1) at

7    7.)  Defendants argue that plaintiff's claims under the California Penal Code should be dismissed.

8    (ECF No. 28-1 at 13.)  Plaintiff asserts in his opposition to the pending motion that he "no longer

9    alleges a violation of California's Penal Code," but that the cited Penal Code sections are

10   applicable to this case.  (ECF No. 29 at 18.)

11           To the extent that plaintiff bases any of his claims on the alleged violation of state

12   criminal statutes, those claims should be dismissed.  See Pellum v. White House, 2:13-CV-0651

13   AC P, 2013 WL 1791937 (E.D. Cal. Apr. 26, 2013) ("Claims of violation of state criminal

14   statutes come within the province of state and county prosecutorial authorities, not that of

15   individual citizens.")  Moreover, to the extent that plaintiff attempts to bring claims based solely

16   on defendants' alleged violation of  prison rules and policies, such claims are likewise subject to

17   dismissal.  There is no independent cause of action under § 1983 for a violation of California's

18   Title 15 regulations. "To the extent that the violation of a state law amounts to the deprivation of

19   a state-created interest that reaches beyond that guaranteed by the federal Constitution, [s]ection

20   1983 offers no redress."  Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir.1997)

21   (quoting Lovell v. Poway Unified Sch. Dist., 90 F.3d 367, 370 (9th Cir.1996)).  See also Davis v.

22   Kissinger, No. CIV S–04–0878 GEB DAD P, 2009 WL 256574, *12 n.4 (E.D. Cal. Feb. 3, 2009).

23   Nor is there any liability under § 1983 for the alleged violation of prison policies.  Cousins v.

24   Lockyer, 568 F.3d 1063, 1070 (9th Cir. 2009) ("[S]tate departmental regulations do not establish

25   a federal *constitutional* violation."); Gardner v. Howard, 109 F.3d 427, 430 (8th Cir. 1997).

26                          PLAINTIFF'S MOTION TO EXPEDITE

27           On August 28, 2013, plaintiff filed a motion requesting the court to expedite the issuance

28   of a decision on defendants' motion to dismiss.  (ECF No. 35.)  Because the court has now

18

addressed defendants' motion to dismiss above, plaintiff's request is no longer necessary and will be denied for that reason.

Accordingly, IT IS HEREBY ORDERED that plaintiff's August 28, 2013 motion to expedite (ECF No. 35) is denied; and

IT IS HEREBY RECOMMENDED that

1. Defendants' May 9, 2013 motion to dismiss (ECF No. 28) be granted in part and denied in part;

2. All of plaintiff's claims against defendant Warden Virga be dismissed with leave to amend within 30 days of any order adopting these findings and recommendations;

3. Plaintiff's claims under the Equal Protection Clause of the Fourteenth Amendment be dismissed with leave to amend within 30 days of any order adopting these findings and recommendations;

4. Plaintiff's request for monetary damages against defendants under the Religious Land Use and Institutionalized Persons Act be dismissed without leave to amend;

5. Plaintiff's claim for an award of monetary damages against defendants in their official capacities be dismissed without leave to amend;

6. Plaintiff's claims based on the California Penal Code, Title 15 of the California Code of Regulations, and the Department Operations Manual be dismissed without leave to amend; and

7. Defendants' motion to dismiss be denied with respect to plaintiff's remaining claims under the Free Exercise Clauses of the United States and California Constitutions and the Religious Land Use and Institutionalized Persons Act.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The

1  parties are advised that failure to file objections within the specified time may waive the right to

2  appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

3  Dated:  January 15, 2014

4

5  _____
   DALE A. DROZD
6  UNITED STATES MAGISTRATE JUDGE

7  Dixie2626.mtd

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28