UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JAMES LEWIS DIXIE,

            Plaintiff,

    v.

TIM VIRGA,

            Defendants.

No.  2:12-cv-2626-MCE-DAD

ORDER

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff, a Muslim, claims that defendants Warden Virga, Elia, Fardan, and Cannedy violated his rights by prohibiting inmates participating in the Enhanced Outpatient Program ("EOP")[1] at California State Prison, Sacramento ("CSP-SAC") from attending Jumu'ah prayer sessions with General Population ("GP") inmates following an alleged fight between an EOP inmate and a GP inmate after a prayer session.  Plaintiff seeks the award of damages, as well as injunctive and declaratory relief.

---

[1]  The "Enhanced Outpatient Program (EOP) provides care to mentally disordered inmate-patients who would benefit from the structure of a therapeutic environment that is less restrictive than inpatient settings.  This may include response to crisis symptoms which require extensive treatment, but can be managed as outpatient therapy with several psychotherapy sessions or medication adjustment with follow-up visits."  Mental Health Program Guide 8, California Department of California Department of Corrections and Rehabilitation, http://www.cdcr.ca.gov/dchcs/docs/mental%20health%20program%20guide.pdf.

Presently pending before the court are the following matters:

- Mandatory screening of plaintiff's first amended complaint, filed August 11, 2014. (ECF No. 77.)
- Plaintiff's motion to compel discovery responses, filed July 25, 2014.  (ECF No. 74.)
- Plaintiff's renewed[2] motion for appointment of counsel, filed September 15, 2014. (ECF No. 84.)
- Defendant Fardan's motion (i) requesting that the court screen plaintiff's first amended complaint and (ii) seeking to waive his right to reply to the first amended complaint. (ECF No. 83.)

Each of these matters is addressed in turn below.

I. Background

    A. Procedural History

On October 23, 2012, plaintiff filed his initial complaint in this civil rights action.  On December 12, 2012, following initial screening, the court determined that service was appropriate on defendants Marc Elia, Daaiyallah Fardan, and Warden Tim Virga.  (ECF No. 10.)  Defendants then moved to dismiss the complaint.  (ECF No. 28.)  On February 19, 2014, defendants' motion to dismiss was granted in part and denied in part, as follows:  (1) plaintiff's claims against Warden Virga and under the Equal Protection Clause were dismissed with leave to amend; (2) plaintiff's claims for (a) monetary damages under the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc et seq. ("RLUIPA"), (b) against defendants in their official capacities, and (c) under certain California prison regulations, were dismissed with prejudice; and (3) the remainder of defendants' motion to dismiss was denied.  As a result of that ruling, plaintiff was permitted to proceed against defendants Elia and Fardan on his claims for monetary damages under the Free Exercise Clauses of both the United States Constitution and the California Constitution, and for declaratory and injunctive relief under RLUIPA.  The court's February 19, 2014 order also granted plaintiff leave to file an amended

_____

[2] On January 1, 2013, the court denied plaintiff's previous motion for appointment of counsel. (ECF No. 15.)

1  complaint.  (ECF No. 43.)  On August 11, 2014, plaintiff filed a first amended complaint.

2  ("FAC," ECF No. 77.)

3         B. Factual Allegations

4         In his FAC, plaintiff alleges as follows.  Plaintiff is a black inmate in the EOP,

5  incarcerated at B-Facility at CSP-Sacramento.  (ECF No. 77 at 4.)  He is a follower of the Islamic

6  faith.  (Id.)  From approximately January 2010 until November 4, 2011, plaintiff consistently

7  practiced the religious tenet of Jumu'ah prayer in the B-Facility chapel at CSP-SAC along with

8  GP inmates.  (Id.)  Plaintiff describes Jumu'ah prayer as "a mandatory weekly prayer that can

9  only be held on Fridays during the apex of the sun (around noon-time), that all Muslims must

10  attend in accordance to the Holy Qur'an . . . ."  (Id. at 7.)

11        On November 7, 2011, defendant Fardan, a Muslim Chaplain at CSP-SAC, informed

12  plaintiff that EOP inmates, such as plaintiff, would no longer be allowed by prison officials to

13  attend Jumu'ah prayer on Fridays with GP inmates because of an "incident" between an EOP

14  inmate and a GP inmate that allegedly occurred in the chapel after Jumu'ah prayer on Friday,

15  November 4, 2011.  (Id. at 4.)  Plaintiff asked Fardan to identify the prison official who made the

16  initial decision to restrict EOP inmates' access to Jumu'ah prayer services.  (Id.)  Defendant

17  Fardan failed and/or refused to answer plaintiff's question.  (Id.)  Plaintiff alleges, on information

18  and belief, that defendant Cannedy, a Correctional Captain at B-Facility in CSP-SAC during the

19  relevant time period, actually made the decision to restrict EOP inmates' access to Friday

20  Jumu'ah prayer services, as well as to two subsequent Islamic religious observances.  (Id. at 8.)

21        On December 8, 2011, plaintiff filed an inmate grievance regarding his denial of access to

22  Jumu'ah prayer, asserting that an isolated incident between two other inmates did not justify

23  restricting his participation in religious services.  (Id.)  On December 13, 2011, plaintiff's inmate

24  grievance was rejected by the  Inmate Appeals Office and returned to plaintiff with instructions to

25  attach documentation evidencing the suspension of religious services.  (Id.)  At some point in

26  /////

27  /////

28  /////

3

1  January 2012, plaintiff obtained the required documentation[3] regarding the suspension of

2  religious services, and attached it to his inmate grievance.  (Id.)  On February 21, 2012, the

3  resubmitted grievance was accepted for processing.  (Id.)

4       On or about December 18, 2011, plaintiff spoke with Bryan Lewis, the EOP inmate who

5  was suspected of being involved in the November 4 incident with the GP inmate.  (Id.)  Inmate

6  Lewis told plaintiff that he did not have a fight with any GP inmate, and that he had only been

7  suspected of fighting.  (Id.)  As a result, he had been placed in Administrative Segregation

8  pending an investigation into the matter.  (Id.)  Inmate Lewis also reported that, after the

9  investigation revealed that no fight actually took place, he was released from administrative

10  segregation.  (Id. at 4-5, 12.)  According to inmate Lewis, he never received a CDCR 115 Rule

11  Violation Report or other type of prison disciplinary action in connection with the suspected

12  fighting incident.  (Id. at 5, 12.)

13       Plaintiff has attached to his complaint the declaration[4] of Muwakkil Tyson, a GP inmate

14  incarcerated at CSP-SAC who was present in the B-Facility chapel during the alleged November

15  4, 2011 incident.  (Id. at 26-27.)  Inmate Tyson avers that, during the Jumu'ah prayer service,

16  defendant Fardan activated his personal alarm because one EOP inmate "became animated."  (Id.

17  at 26.)  Inmate Tyson further declares that correctional officers responded to defendant Fardan's

18  alarm, that no fight occurred, and that the incident involving the animated inmate had nothing to

19  do with any conflict between EOP inmates and GP inmates.  (Id.)

20       On January 22, 2012, plaintiff sent a CDCR 22 Inmate Request to defendant Elia, a

21  Community Resources Manager, asking him to identify the source of the facts stated in his

22  December 22, 2011 memorandum and reveal the identity of the prison official who made the

23

---

24  [3]  The documentation plaintiff obtained was a December 22, 2011 memorandum, authored by

25  defendant Elia, which provided, first, that EOP inmates could no longer be integrated with GP
    inmates because an EOP inmate was attacked and, second, that the decision to restrict EOP access

26  was a matter of plaintiff's personal safety as well as of institutional security.  (ECF No. 77 at 5,
    42.)

27

28  [4]  "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all
    purposes."  Fed. R. Civ. P. 10(c).

decision to stop EOP inmates from attending prayer services with GP inmates.  (Id. at 5.)  On January 31, 3012, plaintiff received a response authored by defendant Fardan, in which Fardan stated that the incident happened two months ago, and that he (Fardan) would be available to provide Jumu'ah prayer services to EOP inmates on Thursdays.  (Id. at 5, 15.)  On February 1, 2012, plaintiff resubmitted his CDCR 22 request to defendant Elia, stating that defendant Fardan had evaded plaintiff's questions and that Elia was the only one who could answer them.  (Id.)  On February 6, 2012, defendant Elia responded, stating that "custody staff @ Sgt. or above may approve a ducat request for chapel services."  (Id.)  Plaintiff claims that this response evaded the questions that he had posed to defendant Elia.  (Id. at 5.)

On February 11, 2012, plaintiff sent defendant Elia a second CDCR 22 request once again posing the same two questions.  (Id. at 5, 15.)  On April 16, 2012, defendant Fardan responded to this request, stating that plaintiff's questions had been answered.  (Id. at 5-6, 15.)  On April 18, 2012, plaintiff submitted his second request for supervisor review, stating that Fardan's response was incorrect and that only Elia could answer the questions asked.  (Id. at 6, 15.)  Elia answered this request on April 30, 2012, stating that plaintiff's questions had been "asked and answered several times."  (Id.)  Plaintiff claims that his questions regarding the basis for the suspension of religious services presented in the two CDCR 22 requests have never been answered by prison officials.  (Id. at 6.)

On May 11, 2012, defendant Tim Virga, Warden at CSP-SAC, addressed plaintiff's inmate appeal at the second level of review.  (Id.)  Plaintiff asserts that in this review:

> Virga did not address the material issue of whether the alleged incident between the two said inmates on November 4, 2011, was an isolated incident or whether the said incident was the result of animosity or hostility between EOP inmates and GP inmates that would pose a threat to inmate safety and institutional safety . . . .

(Id.)  Plaintiff also asserts that Warden Virga refused to identify the officer who made the order to restrict EOP inmates' access to the Jumu'ah prayer services.  (Id.)

Previously, on April 11, 2012, plaintiff had submitted a Request for Religious Accommodation and Investigation to defendants Elia and Warden Virga, requesting an investigation into, among other things, whether restricting EOP inmates' access to Jumu'ah

5

1    prayer services was justified due to safety and security concerns.  (Id. at 6, 20-22.)

2            On November 8, 2012, plaintiff was not allowed to attend the annual Eid al-Adha

3    celebration with GP inmates, allegedly for the same reasons that he was barred from attending

4    Jumu'ah prayer services on Fridays.  (Id. at 7.)  On October 29, 2013, the date of the following

5    year's Eid al-Adha celebration, plaintiff was excluded again from services, for the same reasons.

6    (Id. at 8.)  On neither occasion was a separate Eid al-Adha celebration provided for EOP inmates.

7    (Id.)

8            According to plaintiff, any incident between an EOP inmate and a GP inmate on

9    November 4, 2011 was at most merely a personal dispute.  Plaintiff asserts that his attendance at

10   Jumu'ah prayer services along with GP inmates poses neither a threat to plaintiff's safety nor to

11   institutional security, as there is no animosity or hostility between black EOP inmates and black

12   GP inmates.  (Id. at 7.)

13   II.   Analysis

14        A.   Screening of First Amended Complaint

15           The court previously found that plaintiff had stated a cognizable claim against defendants

16   Fardan and Elia under the Free Exercise Clauses of the United States and California

17   Constitutions, and under RLUIPA.  (ECF No. 39 at 19, adopted by ECF No. 43.)  As the relevant

18   allegations are repeated verbatim in the FAC, the court need not revisit this earlier determination.

19   Accordingly, for screening purposes, the court will only consider those allegations and claims that

20   are newly-pled by plaintiff in his FAC.[5]  These new claims can be summarized as follows:

21        •   The "John Doe" defendant named in plaintiff's initial complaint is now identified

22            as defendant C. Cannedy, a Correctional Captain at B-Facility in CSP-SAC during

23            the relevant time period.

24   _____

25   [5] The court does note one error on plaintiff's part:  in paragraph 36 of his first amended
     complaint, plaintiff alleges a "violation [of his] rights under the First Amendment to the U.S.
26   Constitution."  (ECF No. 77 at 9.)  The equivalent paragraph in the original complaint, paragraph
     24, addressed "plaintiff's rights under the First **and Fourteenth** Amendments to the United States
27   Constitution." (ECF No. 1 at 7) (emphasis added).  The omission in pleading is substantively
     immaterial, as it is settled law that the First Amendment's Free Exercise Clause applies to the
28   states under the Fourteenth Amendment.  Cantwell v. Connecticut, 310 U.S. 296, 303 (1940).

1   • Additional allegations regarding defendant Warden Virga's involvement in the

2   alleged deprivation of plaintiff's civil rights.

3   • Allegations supporting a claim under the Equal Protection Clause.

4   • Allegations supporting a claim for conspiracy to deprive plaintiff of his civil

5   rights.

6       1.  <u>Standard re: Screening</u>

7       The court is required to screen complaints brought by prisoners seeking relief against a

8   governmental entity or an officer or employee of a governmental entity.  <u>See</u> 28 U.S.C. §

9   1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised claims

10  that are legally "frivolous or malicious," that fail to state a claim upon which relief may be

11  granted, or that seek monetary relief from a defendant who is immune from such relief.  See 28

12  U.S.C. § 1915A(b)(1) & (2).

13      A claim is legally frivolous when it lacks an arguable basis either in law or in fact.

14  <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989); <u>Franklin v. Murphy</u>, 745 F.2d 1221, 1227-28 (9th

15  Cir. 1984).  The court may, therefore, dismiss a claim as frivolous where it is based on an

16  indisputably meritless legal theory or where the factual contentions are clearly baseless.  <u>Neitzke</u>,

17  490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully

18  pleaded, has an arguable legal and factual basis.  <u>See</u> <u>Jackson v. Arizona</u>, 885 F.2d 639, 640 (9th

19  Cir. 1989); <u>Franklin</u>, 745 F.2d at 1227.

20      Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain

21  statement of the claim showing that the pleader is entitled to relief,' in order to 'give the

22  defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  <u>Bell Atlantic</u>

23  <u>Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)).

24  However, in order to survive dismissal for failure to state a claim, a complaint must contain more

25  than "a formulaic recitation of the elements of a cause of action;" it must contain factual

26  allegations sufficient "to raise a right to relief above the speculative level."  <u>Bell Atlantic</u>, 550

27  U.S. at 555.  In reviewing a complaint under this standard, the court must accept as true the

28  allegations of the complaint.  <u>See</u> <u>Hospital Bldg. Co. v. Rex Hosp. Trustees</u>, 425 U.S. 738, 740

1   (1976).  The court must also construe the pleading in the light most favorable to the plaintiff and

2   resolve all doubts in the plaintiff's favor.  See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

3                    2.  Is Captain Cannedy properly named as a defendant?

4           Defendant Cannedy is newly named as a defendant in the FAC.  Therein, plaintiff alleges,

5   on information and belief, that Cannedy, a Correctional Captain at B-Facility in CSP-SAC during

6   the relevant time period, "made the specific decision or directive to deny plaintiff his to [sic]

7   attend Jumu'ah Prayer Services and attend both above-said Eid-Al-Adha celebrations . . . ."  (ECF

8   No. 77 at 8.)

9           The court must first decide whether, in determining the sufficiency of a pleading under

10  Federal Rule of Civil Procedure 8, it is appropriate to consider allegations pled on information

11  and belief.  As one judge of this court has previously noted:

13                  Neither the Supreme Court nor the Ninth Circuit has issued a
                    definitive ruling on whether, and under what circumstances,
14                  allegations may properly be pled on information and belief under
                    Rule 8, as interpreted by [Ashcroft v. Iqbal, 556 U.S. 662 (2008)]
15                  and [Bell Atlantic, 550 U.S. at 544].  Nevertheless, a recent Ninth
                    Circuit opinion, Blantz v. Cal. Dep't of Corr., 727 F.3d 917 (9th
16                  Cir. 2013) provides some guidance on the subject.

17                  Blantz concerns a wrongful termination action against the
                    California Department of Corrections and Rehabilitation
18                  ("CDCR").  The Ninth Circuit panel addressed, inter alia, whether
                    plaintiff could properly proceed against Terry Hill, the Chief
19                  Medical Officer overseeing CDCR's medical care system.  The
                    only allegations concerning Hill were that, "on information and
20                  belief," he "direct[ed]" the other defendants to take the challenged
                    actions.  The panel dismissed the claims against Hill, not because
21                  these allegations were pled on information and belief, but because
                    they were conclusory allegations unsupported by further factual
22                  assertions.

23                  From Blantz, one can reasonably infer that district courts may
                    properly consider allegations pled on information and belief in
24                  determining whether claims have been adequately pled under Rule
                    8.  That an allegation is pled on information and belief is neither
25                  dispositive nor particularly germane.  Per Iqbal and Twombly, the
                    proper inquiry remains whether the plaintiff has presented a non-
26                  conclusory factual allegation.  If so, the court may assume the
                    allegation's "veracity and then determine whether [it] plausibly
27                  give[s] rise to an entitlement to relief."  Iqbal, 556 U.S. at 679.  This
                    approach is supported by the text of Rule 11(b):

28  /////

8

> By presenting to the court a pleading . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:   . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .
>
> As the court may rely on [an unrepresented party's] certification as to the likelihood of evidentiary support for any allegations pled on information and belief, it appears reasonable to grant such allegations the benefit of the doubt — so long as they are non-conclusory.

Waldo v. Eli Lilly & Co., No. 13-cv-0789-LKK-EFB, 2013 WL 5554623 (E.D. Cal. Oct. 8, 2013).  The undersigned adopts this reasoning, and accordingly, will consider plaintiff's allegations concerning Cannedy in the FAC that were pled on information and belief.

The question is whether plaintiff has pled sufficient non-conclusory factual matter to support naming Cannedy as a defendant.  Plaintiff has alleged that it was Cannedy, then a Correctional Captain at B-Facility in CSP-SAC, who made the decision to bar plaintiff from the relevant religious observances.  This is a non-conclusory factual allegation.  Moreover, as the court must construe the pleading in the light most favorable to the plaintiff and resolve all doubts in the plaintiff's favor, Jenkins, 395 U.S. at 421, the court will infer that Cannedy, as Correctional Captain, was in a position of sufficient authority to make a decision as to whether EOP inmates could attend the religious observances in question.

Accordingly, for screening purposes, it appears that Cannedy is properly named as a defendant in the FAC.

### 3.  Is Warden Virga properly named as a defendant?

The court previously found that plaintiff had failed to state a cognizable claim against defendant Warden Virga.  However, because the court could not "find at this time that the defects in plaintiff's complaint with respect to his claims against Warden Virga are incapable of being cured by amendment," plaintiff was granted leave to amend the relevant claims.  (ECF No. 39 at 8.)

/////

In his FAC, plaintiff now alleges as follows.  On April 11, 2012, he submitted a Request for Religious Accommodation and Investigation to defendants Elia and Warden Virga, a copy of which is attached as an exhibit to the amended complaint.  (Id. at 6, 20-22.)  In that Request, plaintiff asks:

> that an investigation be conducted by the [Religious Review Committee][6] into this alleged incident of November 4, 2011, and determine whether it had actually occurred . . . and determine whether such a restrict to Jumu'ah as described is in fact an arbitrary decision that is not based on a legitimate penological interest, or whether this restriction is justified by reason(s) of safety and security . . . .  Thereafter, upon conclusion of this requested investigation, I request that the RRC then consider re-instating this religious accommodation to the EOP inmates that is now sought.

(Id. at 21.)  On April 24, 2012, plaintiff's request was denied in writing by defendant Elia.  (Id. at 6, 23.)  Plaintiff paraphrases a California prison regulation for the proposition that Virga, as Warden, was "responsible for making every reasonable effort to provide for the religious and spiritual welfare of all interested inmates . . . ."  (Id. at 6) (citing 15 Cal. Code. Regs. § 3210).  Plaintiff alleges that defendant Elia circumvented required procedures by denying plaintiff's request, and that this circumvention was sanctioned, and acquiesced to by Warden Virga, who was by then on notice as to the alleged constitutional violation.  (Id. at 6-7.)

"In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983," Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  Each defendant is liable only for his or her own misconduct.  Iqbal, 556 U.S. at 676.  However, a supervisor may be held liable under § 1983 "for a subordinate's constitutional violations 'if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.'"  Maxwell v. Cnty. of San Diego, 708 F.3d 1075, 1086 (9th Cir. 2013) (quoting Taylor v. List, 880 F.3d 1040, 1045 (9th Cir. 1989)).

/////

_____

[6] The term apparently originates in 15 California Code of Regulations § 3210(d), which provides: "A request for a religious service accommodation that requires a specific time, location and/or item(s) not otherwise authorized, will be referred to a Religious Review Committee (RRC) for review and consideration."

1    According to the allegations of plaintiff's FAC, his request was addressed to both

2 defendant Elia and Warden Virga, and included sufficient detail to put Warden Virga on notice

3 about the alleged violations of plaintiff's civil rights.  According to the complaint, despite being

4 so informed, Warden Virga failed to act, and instead acquiesced to defendant Elia's denial of

5 plaintiff's request.  By so pleading, plaintiff has alleged sufficient facts to support a claim that

6 Warden Virga "knew of the violations and failed to act to prevent them."  Taylor, 880 F.3d at

7 1045.

8    Accordingly, for screening purposes, the court finds that the FAC properly names Warden

9 Virga as a defendant in this action

10    4.  Does the first amended complaint state a cognizable Equal Protection claim?

11    Plaintiff alleges in the FAC that defendants violated his rights under the Equal Protection

12 Clause of the Fourteenth Amendment.

13    The Equal Protection Clause requires the state to treat all similarly-situated people

14 equally.  See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).  State prison

15 inmates retain a right to equal protection of the laws guaranteed by the Fourteenth Amendment.

16 Walker v. Gomez, 370 F.3d 969, 974 (9th Cir. 2004) (citing Lee v. Washington, 390 U.S. 333,

17 334 (1968)).  "Moreover, the Equal Protection Clause entitles each prisoner to 'a reasonable

18 opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who

19 adhere to conventional religious precepts.'"  Shakur v. Schiro, 514 F.3d 878, 891 (9th Cir. 2008)

20 (quoting Cruz v. Beto, 405 U.S. 319, 322 (1972)).

21    A plaintiff may state an Equal Protection claim by alleging that the state has impinged

22 upon his fundamental constitutional rights.  Nordlinger v. Hahn, 505 U.S. 1, 10 (1992).  One such

23 right is the free exercise of religion.  See  Cruz, 405 U.S. at 322 ("The First Amendment,

24 applicable to the States by reason of the Fourteenth Amendment, prohibits government from

25 making a law 'prohibiting the free exercise (of religion).'").

26    Alternatively, a plaintiff can plead an Equal Protection violation by alleging facts

27 showing:  (1) that he is a member of an identifiable class; (2) that he was intentionally treated

28 differently from others similarly situated; and (3) that there is no rational basis for the difference

11

1    in treatment.  Engquist v. Or. Dep't of Agric., 553 U.S. 591, 601 (2008); Vill. of Willowbrook v.

2    Olech, 528 U.S. 562, 564 (2000).

3         For screening purposes, it appears that plaintiff has adequately alleged that defendants

4    violated the Equal Protection Clause.  In his FAC, plaintiff alleges that defendants determined

5    whether he and other Muslim inmates at CSP-SAC could attend Friday Jumu'ah services (as well

6    as Eid al-Adha celebrations in 2011 and 2012) based on whether these inmates had been

7    classified as EOP or GP.  Plaintiff and others were barred from attending these religious

8    observances because they were classified as EOP.  Plaintiff has also alleged his "sincere belie[f]

9    that Jumu'ah Prayer is a mandatory weekly prayer that only be held on Fridays during the apex of

10   the sun (around noon-time) [and] that all Muslims must attend in accordance to the Holy Qur'an

11   62:9-11." (ECF No. 77 at 7.)  Accordingly, plaintiff has satisfactorily alleged that defendants'

12   employment of his mental health status as a criterion for whether he could attend mandatory

13   religious services unconstitutionally impinged on the free exercise of his Muslim faith.  In other

14   words, plaintiff claims that defendants denied him "a reasonable opportunity of pursuing his faith

15   comparable to the opportunity afforded fellow prisoners who adhere to conventional religious

16   precepts."  Cruz, 405 U.S. at 322.

17        In his FAC, plaintiff has also adequately alleged:  (1) that he is a member of an

18   identifiable class, specifically, Muslim inmates at CSP-SAC; (2) that he was intentionally treated

19   differently from similarly situated inmates, that is, Muslim inmates at CSP-SAC who were

20   classified as GP; and (3) that there is no rational basis for the difference in treatment, based on his

21   allegation that the November 4, 2011 incident "was only a personal dispute . . . between two

22   individuals, and there is no animosity between black EOP inmates and GP inmates that would

23   pose a threat to plaintiff's safety and institutional security if he is permitted to attend Jumu'ah

24   Prayer Services together with GP inmates."  (ECF No. 77 at 7.)  For screening purposes, these

25   allegations, which must be accepted as true at this stage of the proceedings, suffice to state a

26   cognizable Equal Protection claim under a "class of one" theory.  Olech, 528 U.S. at 564.

27   /////

28   /////

5. <u>Does the first amended complaint state a conspiracy claim?</u>

Plaintiff also asserts a civil rights conspiracy claim in his FAC, alleging as follows:

> Defendants conspired for purpose of depriving plaintiff, either directly or indirectly, of equal protections of the laws, by acting in furtherance of the acts directly committed by Defendant C. Cannedy to deprive plaintiff of his right to religious freedom and exercise by supporting Defendant Cannedy in the said violation of plaintiff's rights and conspiring to conceal defendant Cannedy's identity in an attempt to protect Cannedy from liability in this case . . . .

(ECF No. 77 at 8.)  It is unclear whether this claim is brought by plaintiff under 42 U.S.C. § 1983 or 42 U.S.C. § 1985(3).  Accordingly, the court will examine plaintiff's allegations under both statutes.

a. <u>§ 1983 conspiracy</u>

To state a conspiracy claim under § 1983, plaintiff must allege, first, that defendants reached an agreement or a meeting of the minds to violate plaintiff's constitutional rights, and second, that they took some concerted action in furtherance thereof.  <u>Crowe v. Cnty. of San Diego</u>, 608 F.3d 406, 440 (9th Cir. 2010).  Although each of the defendants does not need to know the exact details of the plan, each defendant must share the common objective of the conspiracy.  <u>Id.</u> (quoting <u>United Steelworkers of Am. v. Phelps Dodge Corp.</u>, 865 F.2d 1539, 1541 (9th Cir. 1989)).

Here, plaintiff has adequately alleged two common objectives:  "to deprive plaintiff of his right to religious freedom and exercise . . . and . . . to conceal defendant Cannedy's identity in an attempt to protect Cannedy from liability in this case and matter . . . ."  (ECF No. 77 at 8.)  The first objective would violate plaintiff's First Amendment right to free exercise of religion; the second objective arguably violates plaintiff's First Amendment right to petition the government for redress of grievances.

Plaintiff has also alleged actions in furtherance of the claimed conspiracy, including defendants Fardan's, Elia's, and Warden Virga's repeated refusals to identify the individual who made the initial decision to restrict EOP inmates' access to Jumu'ah prayer services (<u>Id.</u> at 4-6), defendant Elia's authorship of a memo justifying the restriction on the basis of plaintiff's and the

1    institution's security (Id. at 5), and defendant Warden Virga's acquiescence in defendant Elia's

2    decision to continue excluding EOP inmates from Jumu'ah prayer services  (Id. at 7).  These

3    alleged actions are consistent with the alleged objectives of, first, denying plaintiff access to

4    Jumu'ah prayer services, and second, of concealing defendant Cannedy's identity from plaintiff.

5          While plaintiff has not specifically alleged the existence of an agreement or meeting of the

6    minds among defendants to violate his constitutional rights, such may be inferred from the actions

7    and objectives specifically alleged in the FAC.  See Martensen v. Koch, 942 F. Supp. 2d 983,

8    1003 (N.D. Cal. 2013) ("The existence of a conspiracy may be inferred when the alleged

9    conspirators have committed acts that 'are unlikely to have been undertaken without an

10   agreement.') (quoting Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1301 (9th

11   Cir. 1999)).  Of course, it is highly unlikely that plaintiff, as an inmate, would be privy to

12   conversations or other communications between the defendants.  To require him to plead

13   additional facts which are currently beyond his power to obtain would be to in effect bar him

14   from bringing a conspiracy claim.  Because plaintiff has satisfactorily pled the remaining

15   elements of a claim for conspiracy under § 1983 and the allegation of an agreement can be

16   reasonably inferred therefrom, the court will allow him to proceed on this claim.

17                        b.  § 1985 conspiracy

18         It is also possible that plaintiff intended to plead a conspiracy claim under 42 U.S.C.

19   § 1985.  Section 1985 "establishes five classes of prohibited conspiracy."  Kush v. Rutledge, 460

20   U.S. 719, 724 (1983).  The class of conspiracy that is most pertinent to plaintiff's allegations is

21   outlined in subsection (3), which provides in relevant part:

22              If two or more persons . . . conspire . . . for the purpose of
              depriving, either directly or indirectly, any person or class of
23              persons of the equal protection of the laws, or of equal privileges
              and immunities under the laws . . . the party so . . . deprived may
24              have an action for the recovery of damages occasioned by such . . .
              deprivation, against any one or more of the conspirators.
25

26   42 U.S.C. § 1985(3).  To state such a claim , a plaintiff must allege facts demonstrating:

27              (1) a conspiracy; (2) for the purpose of depriving, either directly or
              indirectly, any person or class of persons of the equal protection of
28              the laws, or of equal privileges and immunities under the laws; and

                                          14

(3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

United Bhd. of Carpenters and Joiners of Am., Local 610, AFL-CIO v. Scott, 463 U.S. 825, 828-29 (1983).  Moreover, "the second of these four elements requires that in addition to identifying a legally protected right, a plaintiff must demonstrate a deprivation of that right motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'"  Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992) (quoting Griffith v. Breckenridge, 403 U.S. 88, 102 (1971)).  "The term 'invidious discrimination' generally refers to treating a class differently in order to harm or repress it."  Nat'l Comm. of the Reform Party of the United States v. Democratic Nat'l Comm., 168 F.3d 360, 366 (9th Cir. 1999).  As pled, the FAC simply fails to meet this standard.  It includes no factual allegations supporting the existence of a conspiracy.  Conclusory statements regarding the existence of a conspiracy are insufficient to state a claim under § 1985.  "[T]o be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).  The FAC also includes no allegations that defendants were motivated by an intent to harm either EOP inmates generally or plaintiff specifically.  Accordingly, the FAC fails to state a claim for conspiracy under § 1985.

Having concluded its screening of the FAC, the court will now address the other motions before it.

B.  Plaintiff's motion to compel discovery responses

On July 25, 2014, plaintiff filed a motion to compel defendants Elia and Fardan to provide responses to certain of his discovery requests.  (ECF No. 74.)  On July 31, 2014, defendant Elia filed an opposition to the motion to compel (ECF No. 76), to which plaintiff filed a reply (ECF No. 80).  On August 14, 2014, defendant Fardan filed an opposition to the motion to compel (ECF No. 79), to which plaintiff did not file a reply.  The court now turns to the substance of plaintiff's motion to compel.

1          1. Interrogatories

2          Under the Federal Rules of Civil Procedure, a responding party is obligated to respond to

3   interrogatories fully.  Fed. R. Civ. P. 33(b)(3).  Any objections must be stated with specificity.

4   Fed. R. Civ. P. 33(b)(4).  "The responding party shall use common sense and reason in its

5   responses; hyper-technical, quibbling, or evasive objections will not be viewed favorably by the

6   court."  Johnson v. Cate, No. 1:10-cv-02348-LJO-MJS, 2014 WL 1419816 at * 2 (E.D. Cal. Apr.

7   14, 2014).  A responding party is not generally required to conduct extensive research in order to

8   answer an interrogatory, but must make a reasonable effort to respond.  L.H. v. Schwarzenegger,

9   No. 2:06-cv-2042-LKK-GGH, 2007 WL 2781132 at *2 (E.D. Cal. Sep. 21, 2007).  "Moreover, if

10  the responding party would necessarily have to gather the requested information to prepare its

11  own case, objections that it is too difficult to obtain the information for the requesting party are

12  not honored."  Id.  Finally, the responding party has a duty to supplement any responses if the

13  information sought is later obtained or the response provided needs correction. Fed. R. Civ. P.

14  26(e)(1)(A).

15         Plaintiff seeks to compel further responses to four interrogatories propounded on

16  defendant Fardan and five interrogatories propounded on defendant Elia.  The court has

17  thoroughly reviewed the interrogatories and responses at issue, as well as the parties' filings in

18  support of, and in opposition to, the motions to compel.  Having done so, the court finds the

19  majority of defendants' responses adequate, and therefore will not compel further responses to

20  these interrogatories.

21         Nevertheless, the court is concerned by the responses to plaintiffs' interrogatory #19

22  propounded on defendant Fardan, and interrogatory #6 propounded on defendant Elia.

23         Interrogatory #19 propounded on defendant Fardan provides:

24              Attached hereto, as Exhibit C, is a copy of the CDCR 22 Inmate
                Request Form submitted to you by the plaintiff on January 21,
25              2012. On February 13, 2012, you responded in Section B of the
                request by stating: "We would like to have services for EOP
26              inmates but the prison administration will not permit it."

27              Please identify all prison administration officials to which you refer
                to above who(m) will not permit Jumu'ah Services for EOP
28              inmates.

16

Defendant Fardan responded to this interrogatory as follows:

> Defendant objects to this interrogatory because he is not a custodian of records and cannot authenticate the document Plaintiff attaches as "Exhibit C."   Without waiving this objection, Defendant responds as follows: Defendant does not specifically recall who he was referring to when responding to Plaintiff's CDCR 22.

(ECF No. 74 at 25.)

Similarly, interrogatory #6 propounded on defendant Elia provides:

> Please identify any and all CDCR employee or employees at CSP-SAC that specifically made either directive/decision, whether verbally or otherwise, to no longer permit EOP inmates from going to Jumu'ah Prayer Services with General Population (GP) inmates on B-Facility.

Defendant Elia responded to this interrogatory as follows:

> Defendant does not recall the specific CDCR or CSP-SAC employees who determined that EOP inmates were not permitted to attend Jumu'ah services with GP inmates on B-Facility. However, Defendant is informed and believes that Chaplain Fardan submits inmate ducat requests for every service in the B-Facility chapel, and those ducat requests must be approved and signed by a custody supervisor in the classification of Sergeant or above. Defendant is informed and believes that ducat requests for EOP inmates to attend Jumu'ah services at the same time as GP inmates at the B-Facility chapel were not approved by custody staff.

(ECF No. 74 at 14-15.)

These two interrogatories pose a straightforward question:  which prison official or officials made the decision to prohibit EOP inmates from attending Friday Jumu'ah prayer services in CSP-SAC's B-Facility?  Defendants' responses to this question appear inadequate. By signing a response to a discovery request, a party certifies that it has been formed "after a reasonable inquiry."  Fed. R. Civ. P. 26(g)(1).  "In general, a responding party is not required to conduct extensive research in order to answer an interrogatory, but a reasonable effort must be made."  Gorrell v. Sneath, 292 F.R.D. 629, 632 (E.D. Cal. 2013).  At the very least, "[t]he responding party must state under oath that he is unable to provide the information and must describe the efforts he used to obtain the information."  Bryant v. Armstrong, 285 F.R.D. 596, 612 (S.D. Cal. 2012).

/////

Here, neither defendant Fardan nor defendant Elia describes any efforts undertaken to obtain the information or otherwise refresh his recollection.  Each may have records in his possession reflecting who made the decision at issue, or else be able to make inquiries as to the relevant decisionmakers' identities.  See, e.g., Shields v. Koelling, No. 2:10–cv–2866 WBS KJN, 2012 WL 1435029 (E.D. Cal. Apr. 25, 2012) ("It is unclear how difficult it would be for defendants to discover who, at California State Prison–Solano, is authorized to certify these records.").  That both defendants are sued in their individual, rather than their official, capacities does not absolve them of their responsibility to make a reasonable inquiry before responding to discovery.  It also seems likely that, if this case were to proceed to trial, these defendants "would necessarily have to gather the requested information [regarding who made the decision to bar EOP inmates from Friday Jumu'ah services] to prepare [their] own case[s] . . . ." L.H., 2007 WL 2781132 at *2.

For these reasons, the court will order defendant Fardan to file an amended response to interrogatory #19 propounded upon him, and defendant Elia will be ordered to file an amended responses to interrogatory #6 propounded upon him.  If, following a reasonable inquiry, either is unable to respond to the relevant interrogatory, he must "state under oath that he is unable to provide the information and must describe the efforts he used to obtain the information." Bryant, 285 F.R.D. at 612.

### 2. Requests for Production

A party may serve on any other party a request "to produce and permit the requesting party or its representative to inspect, copy, test, or sample items in the responding party's possession, custody or control." Fed. R. Civ. P. 34(a)(1).  "Control is defined as the legal right to obtain documents upon demand.  The party seeking production of the documents . . . bears the burden of proving that the opposing party has such control." United States v. Int'l Union of Petroleum & Indus. Workers, 870 F.2d 1450, 1452 (9th Cir. 1989).

Plaintiff seeks to compel responses to eleven requests for production propounded on defendant Elia.  According to plaintiff, defendant Elia has produced virtually no documents in response to these requests, and has instead repeated some variant of the following objection:

18

Defendants object to this request because it calls for information which inmates are not permitted to possess under California Code of Regulations, title 15, sections 3450(d), 3321 and 3370. Specifically, this request calls for information that could endanger the safety of another person, could jeopardize the safety and security of the institution, and because no inmate or parolee shall have access to the case records or file of another inmate or parolee.

(ECF No. 74 at 6-12.)

Defendant Elia cites California Code of Regulations title 15, §§ 3321, 3370, and 3450(d) as the basis for his withholding of documents sought by plaintiff. Section 3321, entitled "Confidential Information," provides that the following types of information shall be classified as "confidential":

(1) Information which, if known to the inmate, would endanger the safety of any person.

(2) Information which would jeopardize the security of the institution.

(3) Specific medical or psychological information which, if known to the inmate, would be medically or psychologically detrimental to the inmate.

(4) Information provided and classified confidential by another governmental agency.

(5) A Security Threat Group debrief report, reviewed and approved by the debriefing subject, for placement in the confidential section of the central file.

Cal. Code Regs., tit. 15, § 3321(a). The remainder of the regulation addresses the proper handling of information obtained from confidential sources. In the court's view, defendant Elia cannot justify withholding documents sought by citing to this regulation without further explanation. "A conclusory objection based on institutional security is . . . insufficient," absent an explanation of how the document will compromise security. Rogers v. Giurbino, 288 F.R.D. 469, 480 (S.D. Cal. 2012) (citing Goolsby v. Carrasco, No. 1:09-cv-01650 JLT, 2011 WL 2636099 at *6-7 (E.D. Cal. Jul. 11, 2011)). Defendant Elia has not attempted to make a showing that the requested documents fall under the ambit of § 3321(a).

Section 3370, entitled "Case Records File and Unit Health Records Material — Access and Release," governs access to inmates' case records and health care records. Relevant

19

1  subsections provide:

> (b) Except by means of a valid authorization, subpoena, or court order, no inmate or parolee shall have access to another's case records file, unit health records, or component thereof.
>
> (c) Inmates or parolees may review their own case records file and unit health records, subject to applicable federal and state law. […]
>
> (d) No inmate or parolee shall access information designated confidential pursuant to section 3321 which is in or from their own case records file.

Cal. Code Regs., tit. 15, § 3370.  But defendant Elia nowhere explains why the records sought by plaintiff are confidential.  For example, to the extent that the documents sought would reveal that an inmate is receiving treatment in the EOP, defendant must assert that objection with specificity.

Finally, § 3450, entitled "Personal Information Record Access and Amendment," primarily addresses the right of "any person on whom the department maintains a record or file containing personal information . . . to inspect their record and authorize any person to inspect such records on their behalf ," as well as to correct such information.  Subsection (d), cited by defendant Elia, provides:

> No inmate or parolee shall prepare, handle, or destroy any portion of a departmental record containing confidential information as that term is defined in Section 3321.

Cal. Code Regs., tit. 15, § 3450(d).  This regulation depends on information being designated as classified under § 3321.  As discussed above, defendant Elia has not attempted to show that the information sought by plaintiff is so designated.  Further, none of the cited regulations supports defendant Elia's blanket objection that "no inmate or parolee shall have access to the case records or file of another inmate or parolee."

Defendant Elia is correct in pointing out that "where otherwise discoverable information would pose a threat to the safety and security of the prison or infringe upon a protected privacy interest, a need may arise for the Court to balance interests in determining whether disclosure should occur."  Quezada v. Lindsey, No. 1:10–cv–01402–AWI–SAB, 2014 WL 5500800 at *1 (E.D. Cal. Mar. 29, 2012) (summarizing applicable caselaw).  However, the court cannot engage in such a balancing test given defendant Elia's generic objections and absent specific information

1    about the documents being withheld by the defense.

2          In support of his opposition to the motion to compel, defendant Elia has filed the "meet

3    and confer" letters exchanged by the parties voluntarily prior to plaintiff's filing of his motion to

4    compel.  Plaintiff argues therein that defendant Elia can redact or edit the requested documents

5    "in a manner that protects the safety of any persons and institutional security while preserving the

6    factual accuracy of the events or incident[s] that [are] reported . . . ."  (ECF No. 76-6 at 3.)

7    Defendant Elia replies that "[t]here is no basis for your request that the confidential information

8    be redacted or edited in a manner that protects the safety of persons and institutional security

9    while preserving the factual accuracy of the events or incidents that [are] reported therein in those

10   said documents."  (ECF No. 76-7 at 5.)  Defendant Elia's statement of the law is incorrect.  In

11   cases involving inmate plaintiffs, court often order the production of documents with confidential

12   information redacted and accompanied by a privilege log.  See, e.g. Manriquez v. Hutchins, No.

13   1:09–cv–00456–OWW–SMS, 2011 WL 3290165 at *8 (E.D. Cal. Jul. 27, 2011); Womack v.

14   Virga, No. 2:11-cv-1030-MCE-EFB, 2011 WL 6703958 at *6 (E.D. Cal. Dec. 21, 2011); Candler

15   v. Santa Rita Cnty. Jail Watch Commander, No. 11-cv-01992-CW (MEJ), 2014 WL 2120310 at

16   *5 (N.D. Cal. May 21, 2014).

17         The parties' discovery dispute in this regard will be resolved by defendant Elia's

18   production of the documents sought by plaintiff's requests for production #1, 2, 3, 8, 9, 18, and 20

19   for in camera review by the undersigned.  The documents submitted for in camera review must

20   be accompanied by a cover letter explaining the attendant security and/or privacy concerns in

21   sufficient detail to permit the court to balance the concerns raised against plaintiff's asserted need

22   for the information sought.  The court can then determine whether it is appropriate to order

23   production of these documents, whether in unredacted or redacted form.

24         Defendant Elia will not be required to respond further to requests for production #4 & 5,

25   in which plaintiff seeks documents showing the historical housing locations of inmates Bryan

26   Lewis and Jacoby Pope.  Plaintiff has not sufficiently justified the relevance of these documents

27   to his claims.  Moreover, the institutional security concerns attendant on release of this

28   information is readily apparent.

Defendant Elia also will not be required to respond further to request for production #6, in which plaintiff seeks documents related to work assignments in a dining hall at CSP- SAC. Defendant Elia has responded that he has made a reasonable inquiry and that no responsive documents exist.  (ECF No. 74 at 8.)  In so doing, he has satisfied his discovery obligations. Under these circumstances, it is unclear what documents defendant Elia could be compelled to produce in any event.

Finally, plaintiff concedes that he no longer seeks to compel responses to his request for production #21 (Reply, ECF No. 80 at 8).  Accordingly, the court will deny plaintiff's motion as to this request.

C.  Plaintiff's renewed motion for appointment of counsel

On September 15, 2014, plaintiff filed a renewed motion for appointment of counsel. (ECF No. 84.)  As the court has previously advised plaintiff, the United States Supreme Court has ruled that district courts lack authority to require counsel to represent indigent prisoners in § 1983 cases.  Mallard v. United States Dist. Court, 490 U.S. 296, 298 (1989).  In certain exceptional circumstances, the court may request the voluntary assistance of counsel pursuant to 28 U.S.C. § 1915(e)(1).  Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991); Wood v. Housewright, 900 F.2d 1332, 1335-36 (9th Cir. 1990).

The test for exceptional circumstances requires the court to evaluate the plaintiff's likelihood of success on the merits and the ability of the plaintiff to articulate his claims pro se in light of the complexity of the legal issues involved.  See Wilborn v. Escalderon, 789 F.2d 1328, 1331 (9th Cir. 1986); Weygandt v. Look, 718 F.2d 952, 954 (9th Cir. 1983).  Circumstances common to most prisoners, such as lack of legal education and limited law library access, do not establish exceptional circumstances that would warrant a request for voluntary assistance of counsel.  In the present case, the court does not find the required exceptional circumstances.

Plaintiff's request for the appointment of counsel will therefore be denied.

D.  Defendant Fardan's motion for screening and for waiver of right to reply

Defendant Fardan has filed a motion (i) requesting that the court screen plaintiff's FAC and (ii) seeking to waive his right to reply to that complaint.  (ECF No. 83.)  Plaintiff has filed a

1   notice of non-opposition to the latter motion.  (ECF No. 85.)

2        The court has screened plaintiff's FAC, per the discussion above.  Upon issuance of this

3   order, defendant Fardan will be required to timely answer the first amended complaint.

4   IV.  Conclusion

5        Based on the foregoing, IT IS HEREBY ORDERED that:

6        1.  The allegations in the first amended complaint are found sufficient to state potentially-

7             cognizable claims against defendants C. Cannedy and Warden Tim Virga, as well as a

8             claim under the Equal Protection Clause of the Fourteenth Amendment, pursuant to 42

9             U.S.C. § 1983.  See 28 U.S.C. § 1915A.  With this order, the Clerk of the Court shall

10            provide to plaintiff a blank summons, a copy of the first amended complaint filed

11            August 11, 2014, two USM-285 forms, and instructions for service of process on

12            defendants C. Cannedy and Warden Tim Virga.  Within thirty days of service of this

13            order plaintiff may return the attached Notice of Submission of Documents with one

14            completed summons, the two completed USM-285 forms, and three copies of the first

15            amended complaint filed August 11, 2014.  The court will transmit them to the United

16            States Marshal for service of process pursuant to Fed. R. Civ. P. 4.  Defendants

17            C. Cannedy and Warden Tim Virga will be required to respond to plaintiff's

18            allegations within the deadlines stated in Fed. R. Civ. P. 12(a)(1).

19       2.  Plaintiff's motion to compel further responses to interrogatory no. 19 propounded on

20            defendant Fardan (ECF No. 74) is granted.  If, following a reasonable inquiry,

21            defendant Fardan is unable to respond to this interrogatory, then he must state under

22            oath that he is unable to provide the information requested and must describe the

23            efforts he used to obtain the information.

24       3.  Plaintiff's motion to compel further responses to interrogatory nos. 11, 18, and 21

25            propounded on defendant Fardan (ECF No. 74) is denied.

26       4.  Plaintiff's motion to compel further responses to interrogatory no. 6 propounded on

27            defendant Elia (ECF No. 74) is granted.  If, following a reasonable inquiry, defendant

28            Elia is unable to respond to this interrogatory, then he must state under oath that he is

unable to provide the information requested and must describe the efforts he used to obtain the information.

5.  Plaintiff's motion to compel further responses to interrogatories nos. 9, 20, 23, and 25 propounded on defendant Elia (ECF No. 74) is denied.

6.  Within 21 days from entry of this order, defendant Elia shall submit to the chambers of the undersigned for in camera review documents responsive to plaintiff's request for productions nos. 1-3, 8, 9, 18, and 20.  Defendant Elia's submission should (a) identify those portions of the responsive documents that defendant Elia contends should not be disclosed to plaintiff, and (b) be accompanied by a cover letter (i) describing in detail his justification for withholding this information and (ii) citing to specific legal authority in support of  his position.  The undersigned will then determine which, if any, of these documents should be released to plaintiff and whether if released, redaction is required.

7.  Plaintiff's motion to compel further responses to requests for production nos. 4-6 and 21 propounded on defendant Elia (ECF No. 74) is denied.

8.  Plaintiff's motion to appoint counsel (ECF No. 84) is denied.

9.  Defendant Fardan's motion requesting that the court screen plaintiff's first amended complaint (ECF No. 83) is denied as moot.

10. Defendant Fardan's motion seeking to waive his right to reply to the first amended complaint (ECF No. 83) is denied in that both defendant Fardan and defendant Elia will be required to timely file responsive pleadings to the first amended complaint upon issuance of this order.

11. The discovery deadline of December 5, 2014 and non-motion deadline of March 6, 2015 will be reset at such time as defendants C. Cannedy and Warden Tim Virga appear in this action.

Dated:  January 29, 2015

*Dale A. Drozd*

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:10

1   dixi2626.various